UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X     **Docket No.:**
KARIAN GORDON,

                              Plaintiff,

            -against-                                      **COMPLAINT**

CVS RX SERVICES, INC., CVS PHARMACY, INC.,
CVS ALBANY, L.L.C. d/b/a CVS, CVS HEALTH
CORP., and KATHLEEN COLLINS,                              **JURY TRIAL REQUESTED**

                              Defendants.
----------------------------------------------------------------------X

        Plaintiff KARIAN GORDON ("Plaintiff" or "Gordon"), by her attorneys

MADUEGBUNA COOPER, LLP, for her complaint, respectfully alleges:

## NATURE OF THE ACTION

        1.        This is a pregnancy discrimination action against Defendants CVS Rx SERVICE,

INC., CVS PHARMACY, INC., CVS ALBANY, L.L.C. d/b/a CVS, CVS HEALTH CORP.,

(collectively "CVS"), and their agent and employee, Defendant KATHLEEN COLLINS

("COLLINS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., as

amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"); the

Americans Disability Act, 42 U.S.C. § 12101 *et seq.*("ADA"); the Family Medical Leave Act, 29

U.S.C. § 2610, *et seq.* ("FMLA"); New York Human Rights Law as contained in New York

State Executive Law, § 296 *et seq.* ("NYSHRL"); and New York City Human Rights Law, as

contained in the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL").

## JURISDICTION

        2.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

        3.        This Court has supplemental jurisdiction over the state causes of action pled.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## PROCEDURAL REQUIREMENTS

5.      Prior to commencement of this action, Plaintiff served a copy of the complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with New York City Administrative Code Section 8-502 (c).

6.      Charges of discrimination were filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to the PDA and ADA.

7.      Plaintiff sued within 90 days from receiving her Right to Sue letter from EEOC dated March 9, 2018 and postmarked March 13, 2018.

## PARTIES

8.      GORDON is a 28-year old black female of Jamaican and St. Croix national origin.

9.      At all relevant times, she resided in the City and State of New York.

10.     In or about October 2014, GORDON was hired by CVS and trained as a certified pharmacy technician, a position she held until her termination on April 1, 2016.

11.     Prior to working for CVS, GORDON attended the University of Richmond in Richmond, Virginia and has sales experience in the insurance, automobile, and clothing retail sectors.

12.     At all relevant times, Defendant CVS RX SERVICES, INC. was and is a domestic New York corporation, authorized to transact business within the City and State of New York.

13.     At all relevant times, Defendant CVS PHARMACY, INC. was and is a Rhode Island corporation, authorized to transact business within the City and State of New York.

14.     At all relevant times, Defendant CVS Albany, L.L.C. d/b/a/ CVS was and is a domestic New York limited liability company, authorized to transact business within the City and

State of New York.

15.     At all relevant times, Defendant CVS HEALTH CORP. was and is a domestic Delaware corporation.

16.     At all relevant times, Defendant COLLINS was employed by Defendant CVS as the Pharmacy Head Manager at Store No. 3096 located at 3775 East Tremont Avenue, the Bronx, New York, 10465 and, upon information and belief, is still employed by Defendant CVS.

17.     Upon information and belief, COLLINS is a licensed Pharmacist and resides in New York.

18.     Upon information and belief, at all material times, Defendant COLLINS is familiar with, and has knowledge of, state and local laws and regulations relating to the hiring, retention, and supervision of Pharmacy Technicians and Pharmacists within the City and State of New York.

19.     At all relevant times, as a supervisor for CVS, Defendant COLLINS controlled the terms and conditions of Plaintiff's employment with CVS and had the authority to hire and terminate employees.

20.     Defendants COLLINS is sued here both in her personal and official capacities.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.  Pharmacy Technician Duties

1.     In or about October 2014, CVS hired GORDON to work fulltime and began as a Pharmacy Technician Trainee.

2.      After completing her training, GORDON was promoted to the title of Certified Pharmacy Technician, a position she held until her unlawful termination from CVS on April 1, 2016.

3.     Pharmacy Technicians assist Pharmacists with the daily tasks of running a pharmacy.

4.      In 1984, the New York State Board of Regents approved rules that allow pharmacists to obtain the assistance of unlicensed personnel, commonly referred to as "pharmacy technicians," though this term is not officially recognized in this state's laws, rules and regulations.

5.      Pharmacy technicians learn pharmacy law, ethics, medication dosage calculation, medical record privacy regulations, pharmacy administration and must be aware of prescription requirements, proper handling of private patient information, how to fill prescriptions, how to process insurance claims, and pharmacy record keeping.

6.      Pharmacy Technicians also assist the pharmacist by performing administrative tasks such as running the cash register, filing paperwork, processing insurance claims, and tracking inventory.

7.      Pharmacy Technicians do not receive medical training and are not allowed to give medical advice to customers.

8.      While Pharmacy Technicians may accept prescriptions that customers drop off, Pharmacists must review and approve the prescription before it is filled.

9.      Once the pharmacist approves a prescription, the pharmacy technician will locate and dispense the prescribed drug. When the medication is packed and labeled, the pharmacist must review it for accuracy before it is sold to the customer.

**B.  Defendant COLLINS identifies GORDON as a Promising Employee**

10.      GORDON was originally assigned to work full-time for Store No. 7019 located at 150 East 42nd Street, New York, NY 10017.

11.      However, Defendant COLLINS requested that GORDON transfer to her Bronx store after Gordon worked a pick-up shift there.

-4-

12.     Defendant COLLINS thought GORDON was a good employee with leadership potential and liked how she asked questions when she was unsure of something.

13.     Defendant COLLINS also observed that GORDON was good with pharmacy customers.

14.     The East Tremont Bronx CVS and pharmacy is open 24-hours a day and does not have security guards.

**C.  GORDON faces Retaliation for Engaging in Protected Whistleblower Activities[1]**

15.     In or around February 2015, GORDON began to notice, based on her training and knowledge of the applicable laws or regulations, that Defendant COLLINS and other pharmacists at the East Tremont Bronx store allowed Pharmacist Technicians to perform duties that she believed in good faith to be improper and unlawful for non-pharmacists.

16.     GORDON observed non-pharmacist employees reconstituting medications, including narcotics, without pharmacist oversight or approval.

17.     On at least one occasion, GORDON refused to ring up a prescription that was not properly certified by a pharmacist and was reconstituted by a Pharmacy Technician.

18.     GORDON also observed Pharmacy Technicians counseling and providing medical advice to customers after they asked to speak with a pharmacist in violation of Title 8, Article 137, Section 6805 of New York's Education Law and Part 63 of the Commissioner's Regulations.

19.     In response, GORDON complained to Defendant COLLINS about these dangerous, unlawful and improper practices based on her training and reasonable belief that the public health and safety of the specific patients who she saw being unlawfully assisted and the general public are best protected when licensed Pharmacist provide such assistance because providing those

---

[1] Plaintiff only alleges violations of New York Labor Law Sections 740 and 741 as background evidence, not as timely claims.

services and advice without proper license or training presented a substantial and specific danger to the public health or safety or a significant threat to the health of specific CVS customers that GORDON personally observed.

20.     In making her objections to this unlawful health practice known to Defendants, Plaintiff brought the improper quality of patient care to the attention of her supervisor and gave COLLINS reasonable opportunity to correct the complained of activity, policy or practice.

21.     Furthermore, GORDON complained because Defendants' policy of allowing non-licensed pharmacist to provide pharmacist services was improper quality of patient care and in good faith, reasonably believed that the activity, policy, or practice constituted a violation of the laws, rules, regulations, or declaratory rulings adopted pursuant to law governing Pharmacists in the State of New York.

22.     GORDON also knew that the activity, policy and practice violated the law, rules, and regulations adopted pursuant to law governing Pharmacists in the State of New York, and that such violations creates a substantial and specific danger to the public health or safety since obtaining medicines and counseling from untrained and licensed CVS pharmacy employees could cause severe injury or death.

23.     On or about February 6, 2015, GORDON reported the violations to Defendant CVS's human resource employee Anna Valentine and left two voice messages but never received a response.

24.     Immediately after her complaint, ad in or about February 6, 2015, GORDON's work hours were reduced to a few hours a week in retaliation for her concern for the quality of patient care and public safety.

25.     Defendants' reduction of Plaintiff's work hours at CVS was unlawful retaliation in violation of Sections 740 and 741 of the New York State Labor Law.

26.     In or about February 6, 2015, GORDON complained about the reduced hours and Defendant COLLINS falsely told GORDON the store and pharmacy had no hours to give her or anyone else, at the same time that new Pharmacy Technicians were being hired.

27.     At the same time, the work hours of the other Pharmacy Technicians were not reduced.

28.     When GORDON again asked for more work hours, COLLINS ordered her to clean the basement, a task that was not part of a Pharmacist Technician's duties. The basement contained water leaks and rat feces. Even while wearing gloves and a face mask, GORDON's eczema skin condition was aggravated by the humid and dirty basement.

29.     Around the same time when she was asking for more hours, in or about February 6, 2015, the CVS manager for the entire store, who was aware of Gordon's complaints to COLLINS, told her "you should work in the South Bronx store. You would do better there." The CVS Store Manager, upon information and belief, is not black and is of Indian-Asian descent.

30.     The South Bronx stores are located in lower-income and more crime-ridden neighbors with a higher-percentage of African-American customers compared to the Throgs Neck location of the East Tremont Avenue CVS.

31.     Defendant COLLINS was present when the CVS Store Manager made the statement and did not protest or report it.

32.     GORDON, believing the statement to be offensive and racist, refused to transfer to the South Bronx location, was given even less work hours and told that she could try to pick up more hours at different store locations.

33.     Overall, Defendants CVS and COLLINS offered further false reasons why GORDON's hours were reduced including, that she did not have the training to complete certain

tasks, that the work hours were computer-generated and not in their control and that there were no hours to give. However, the work schedules for similarly-situated Pharmacy Technicians who did not engage in protected activity and reported to Defendant COLLINS were not affected.

34.     In fact, GORDON even observed that work hours were given to employees visiting from other CVS locations. After she pointed this out in protest of her reduced hours, GORDON was told that the employees were paid through their home stores, so that the money did not come from the East Tremont budget.

35.     In or around late February 2015, GORDON complained to CVS District Mangers Nasir Iqbal ("Iqbal") and Tarick M. Ali ("Ali") about the unlawful behavior of the Pharmacy Technicians and how her work hours were drastically cut when no other Pharmacy Technician or employee faced the same reduction.

36.     Iqbal and Ali assured GORDON that they would look into the issue.

37.     GORDON never received a response.

38.     Despite Plaintiff's objections, Defendants continued with the activity, policy or practice complained of.

39.     After her complaints, Defendants also began issuing write-ups for tardiness when other similarly-situated Pharmacy Technicians supervised by Defendant COLLINS who had not engaged in whistleblower activity were allowed to clock in late without any disciplinary action.

40.     On or about February 2015, Defendant COLLINS even allowed one such employee to clock in late without disciplinary action and then leave the store to get food from a nearby restaurant while on the clock.

41.     On or about February 2015, when GORDON complained about being singled out for tardiness despite the treatment of other employees who did not engage in protected activity,

Defendant COLLINS told GORDON to just worry about herself.

**D.  GORDON receives Customer Service Award**

42.     In September 2015, GORDON received a customer service award based on online customer feedback. Defendant COLLINS signed the award.

**E.  GORDON informs Defendants of her Pregnancy**

43.     In or around January 2016, GORDON learned that she was pregnant with her first child.

44.     Her doctors told her that she should not overwork herself due to the risk of miscarriage and advised her to take extra breaks at work if she felt dizzy or nauseous.

45.     At or around the end of January 2016, GORDON told Defendant COLLINS that she was pregnant and would need to change her availability due to her pregnancy and the health concerns her doctors advised her about.

46.     Specifically, GORDON requested that her schedule not include working late shifts so she could keep a regular sleeping schedule and get home at a decent hour, given that the pharmacy was open 24-hours a day.

47.     GORDON also said that she may need to take days off from work when she feels dizzy and nauseous.

48.     At the same time, GORDON also began filling her prescription for pre-natal medication at the East Tremont CVS pharmacy that Defendant COLLINS managed and spoke to her about the prescription.

49.     GORDON provided her changed availability to COLLINS and watched her enter it in computer system.

50.     Yet, from January 2016 onward, COLLINS kept scheduling GORDON for the

exact time she asked not to be scheduled.

51.   When GORDON asked COLLINS why her schedule requests based on her pregnancy were not reflected in the schedule, COLLINS said, in effect, "your availability dropped out of the system and it said you were available at any time."

**F. Defendants Target GORDON for Sham Disciplinary Write-Ups**

52.   On February 9, 2016, a large male pharmacy customer became aggressive toward GORDON because his prescription was not ready due to an inaccurate automated notification system that CVS uses. The customer cursed at GORDON and called her a "black bitch."

53.   In response, GORDON called the police because she felt threatened, feared for her physical safety and pregnancy, and her store had no security.

54.   Jessica, an assistant store manager, also tried to help GORDON and said she would explain to COLLINS that the incident was not her fault.

55.   None of the Pharmacists on duty helped GORDON with the irate customer.

56.   However, COLLINS later used this incident as a pretext to issue sham discipline against GORDON in March 2016 – weeks after it occurred.

57.   On February 10, 2016, the next day, the stress of dealing with the abusive customer caused GORDON to call out from her shift because she had a stress-induced bleeding episode and had to seek medical attention.

58.   While preparing for work, GORDON informed COLLINS that she was at the doctor's office for her pregnancy and would be late for her shift.

59.   Later that day, despite her knowledge of Plaintiff's doctor visit, COLLINS wrote GORDON up for being late and included in the write-up an event from November 2015, which occurred over three months prior.

60.     In the February 10, 2016 write up, COLLINS also blamed GORDON for calling the police in response to the threatening customer.

61.     COLLINS refused to provide GORDON a copy of the write-up.

**G. Defendants Refuse GORDON Reasonable Accommodations for her Pregnancy Related Medical Needs**

62.     After informing COLLINS of her pregnancy, Defendants refused to provide reasonable accommodations to GORDON from February 2016 until her termination on April 1, 2016.

63.     Defendants also refused to engage in cooperative dialogue about GORDON's reasonable accommodation requests but instead summarily rejected her requests.

64.     First, COLLINS would not provide GORDON with the modified schedule she requested.

65.     Defendants also refused to discuss or provide GORDON with flexible start times for her shifts.

66.     Due to the need to attend frequent unplanned doctor appointments, GORDON was forced to call out from work with the pharmacist on duty or call the store and explain why she would be late for her shift. However, GORDON would still cover for other shifts to help her co-workers when she could.

67.     Second, Defendants refused to let GORDON take extra breaks to sit down when she felt dizzy and nauseous, though GORDON's doctors had instructed her to take breaks as needed.

68.     Instead, Defendants required GORDON to wait for her scheduled breaks.

69.     On one occasion, GORDON suffered dizziness and sat down to take a break. When Defendant COLLINS saw GORDON glance at her phone, she wrote her up, in another attempt to create a pretextual paper trail against GORDON.

70.     Other Pharmacy Technicians and Pharmacists under Defendant COLLINS' supervision who were not pregnant frequently used their phones during their shifts on the work floor and have not faced disciplinary action.

71.     On another occasion in 2016, GORDON became dizzy from her pregnancy and asked to sit and rest. Christine, the Pharmacist on duty, rolled her eyes in response before telling GORDON that she had to wait to take her scheduled breaks.

72.     Third, GORDON requested to work in the production area of the pharmacy so she could sit down more often and not stand at the cash register.

73.     Defendants refused to discuss, consider or provide this reasonable accommodation, and forced GORDON to continue standing at the cash register waiting on customers and did not engaged in the interactive process for her requests.

74.     Fourth, GORDON requested the use of a chair or stool to use when working at the register when no customers were in line.

75.     Defendant COLLINS refused to discuss, consider or provide GORDON's reasonable accommodation request and did not engaged in the interactive process for her requests.

**H.  GORDON is Unlawfully Terminated from CVS Due to her Pregnancy**

76.     On March 7, 2016, GORDON received an impact and contributions award from CVS District Manager Ali based on customer surveys on-line.

77.     On April 1, 2016, GORDON attended a pre-natal appointment that her doctor requested at the last minute to discuss test results.

78.     GORDON did not call out from work because she believed the appointment would not conflict with her shift.

79.     After the appointment ran late, GORDON told Defendant COLLINS that she was

running late for her shift and later explained that she was late due to a medical appointment related to her pregnancy.

80.    Shortly after clocking in for her shift, GORDON was called to the office and Defendant COLLINS told her that she was being terminated due to her attendance issues.

81.    COLLINS told GORDON "the decision is coming from corporate and is not up for discussion."

82.    However, when GORDON spoke to corporate employees, like CVS District Managers Ali and Iqbal, both claimed not to be aware that GORDON was being terminated.

83.    On April 20, 2016, CVS District Manager Ali told GORDON on the telephone that he did not know she was pregnant and "that changes everything." However, another pharmacist told GORDON that Ali knew about her pregnancy.

84.    Despite his assurances, CVS did not offer to reinstate GORDON.

85.    On or about April 28, 2016, CVS District Manager Iqbal called GORDON on the phone and asked her if she had told Defendant COLLINS about her pregnancy. GORDON confirmed that she did tell Defendant COLLINS about her pregnancy.

86.    Iqbal asked if GORDON had requested any time off for her pregnancy, and GORDON explained that she was never advised that she could take time off from work.

87.    Iqbal also told GORDON that Defendant COLLINS should have offered her a leave of absence instead of terminating her.

88.    Iqbal further asked if GORDON had requested a modified schedule. GORDON explained that she did, but that Defendant COLLINS initially made the changes but then scheduled GORDON for the exact times she did not want to work, explaining that there must have been a computer glitch.

-13-

89.     Iqbal concluded the call by stating that he would like to compensate GORDON and help in any way that he could. Iqbal said he would speak with Ali and Defendant COLLINS to see what they can do to help and that he would then contact GORDON.

90.     In May 2016, following her termination, GORDON learned that the New York City Department of Consumer Affairs investigated CVS and found that GORDON had not been given the required unpaid sick leave that she was lawfully entitled to under the City of New York's paid sick leave laws.

91.     CVS mailed a check to reimburse GORDON for $147.76 for the paid sick leave that she was not informed about or allowed to use, reflecting approximately two full days of work or three part-time shifts.

92.     Upon information and belief, the same days that Defendants counted Plaintiff as absent due to her pregnancy and related illness and used to justify her termination should have been provided as paid sick leave under the City's laws.

93.     Upon information and belief, GORDON was replaced with a non-pregnant Pharmacy Technician.

**I.   GORDON has Suffered Emotional Distress as a Result of Defendants' Actions**

94.     Due to the stress of her unlawful termination and lack of income, GORDON believed that she had lost her pregnancy and required an emergency sonogram in or around late April 2016.

95.     While the sonogram results revealed that she still had a healthy pregnancy, GORDON's unlawful and discriminatory termination from CVS caused her to have no income or the ability to pay her portion of the rent or utilities.

96.     Despite applying for more jobs that she was qualified for, GORDON's pregnancy has prevented her from finding another job.

97.     Some employers have given her an application, asked if she was pregnant and then explained that they needed to hire someone with a reliable schedule, after visibly staring at her pregnant stomach.

98.     With no income or job, GORDON was forced to spend time living in a New York City shelter for women and children during the summer of 2016.

## FIRST COUNT AGAINST CVS
### (Sex and Pregnancy Discrimination under the PDA of Title VII)

99.     Plaintiff hereby realleges each allegation in each numbered paragraph above.

100.    Plaintiff was pregnant and member of a protected class.

101.    Plaintiff was satisfactorily performing the duties her position required.

102.    Plaintiff was discharged under circumstances raising an inference of discrimination by being terminated shortly after she announced her pregnancy, being targeted for discipline not imposed on other non-pregnant employees, written up for alleged incidents that occurred months earlier, denied reasonable accommodations that would have enabled Plaintiff to avoid being targeted for disciplinary write-ups in the first place, and replaced with a non-pregnant Pharmacy Technician.

103.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## SECOND COUNT AGAINST CVS
### (Disability Discrimination under the ADA)

104.    Plaintiff hereby realleges each allegation in each numbered paragraph above.

105.    Plaintiff suffered from disabilities that the ADA covers, including pregnancy related dizziness and bleeding.

106.    Defendants knew of Plaintiff's disability prior to her termination and perceived her as disabled prior to her termination.

107.    Defendants discriminated against Plaintiff on the basis of her disability, in violation of the ADA, by failing to provide Plaintiff reasonable accommodations of her disabilities and by terminating Plaintiff's employment because of her disabilities.

108.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## THIRD COUNT AGAINST ALL DEFENDANTS
### (Interference with Rights under the FMLA)

109.    Plaintiff hereby realleges each allegation in each numbered paragraph above.

110.    At all relevant times, Plaintiff was an eligible employee under the FMLA because she had previously worked for at least twelve months by the employer and for at least 1,250 hours of service with such employer during the previous 12-month period.

111.    Plaintiff is also an "employee" under the FMLA.

112.    Defendant CVS is an "employer" for purposes of the FMLA.

113.    Defendant COLLINS falls within the definition of "employer" of the FMLA.

114.    Defendants unlawfully interfered with GORDON's FMLA rights by failing to advise her of her rights and failed to inquire whether GORDON's medical condition was a qualifying "serious health condition" under the FMLA for leave or intermittent leave at the time GORDON gave notice that she could not come to work due to pregnancy related medical issues.

115.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## FOURTH COUNT AGAINST ALL DEFENDANTS
### (Failure to Provide Reasonable Accommodation under the NYSHRL)

116.    Plaintiff hereby realleges each allegation in each numbered paragraph above.

117.    Plaintiff was disabled within the meaning of the NYSHRL due to her pregnancy

and related medical conditions.

118.    Defendants CVS and COLLINS knew about Plaintiff's pregnancy and medical conditions.

119.    Plaintiff was able to perform the essential functions of her job with a reasonable accommodation, including, but limited to, the requests to (i) schedule modifications, (ii) additional work breaks, (iii.) modified duty in the production unit so she could sit, and (iv.) use of a chair or stool at the cash register.

120.    Defendants refused to engage in an individualized interactive process or provide any such accommodations to Plaintiff.

121.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## FIFTH COUNT AGAINST ALL DEFENDANTS
### (Failure to Provide Reasonable Accommodation under the NYCHRL)

122.    Plaintiff hereby realleges each allegation in each numbered paragraph above.

123.    Plaintiff was pregnant and experiencing medically related conditions at the time of her termination and at the time she requested several different reasonable accommodations, and Plaintiff was also disabled within the meaning of the NYCHRL.

124.    Plaintiff requested reasonable accommodations due to her pregnancy and medically related conditions, including, but not limited to, (i) schedule modifications, (ii) additional work breaks, (iii.) modified duty in the production unit so she could sit, and (iv.) use of a chair or stool at the cash register, and Defendants knew or should have known that GORDON needed reasonable accommodations based on her pregnancy and medical related condition.

125.    Defendants failed to provide GORDON with any reasonable accommodations and

terminated her employment based on her pregnancy.

126.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## SIXTH COUNT AGAINST ALL DEFENDANTS

### (Pregnancy Discrimination in Violation of the NYSHRL & NYCHRL)

127.    Plaintiff hereby realleges each allegation in each numbered paragraph above.

128.    Plaintiff was pregnant and member of a protected class.

129.    Plaintiff was satisfactorily performing the duties required by the position.

130.    Plaintiff was discharged under circumstances raising an inference of discrimination by being terminated shortly after she announced her pregnancy, being targeted for discipline not imposed on other non-pregnant employees, written up for alleged incidents that occurred months earlier, denied reasonable accommodations that would have enabled Plaintiff to avoid being targeted for disciplinary write-ups in the first place, and replaced with a non-pregnant Pharmacy Technician.

131.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## PUNITIVE DAMAGES

132.    By reason of the wanton, unrepentant, reckless and egregious conduct of Defendants herein-above alleged, Plaintiff claims punitive damages under the NYCHRL.

**WHEREFORE,** Plaintiff prays that this Court grant him judgment containing the following relief:

a.    Impanel a jury to hear Plaintiff's claims;

d.    An award of damages in an amount to be determined upon the trial of this matter

to compensate Plaintiff for violations of her rights under the PDA, ADA, FMLA, NYSHRL, and NYCHRL.

e.    An award of damages to compensate Plaintiff for anguish, humiliation, embarrassment, and emotional distress for each cause of action, where permitted by law;

f.    Liquated damages under the FMLA;

g.    An award of punitive damages to be determined at the time of trial for each cause of action, where permitted by law;

h.    An award of reasonable attorney's fees and costs related to Plaintiff's claims under the PDA, ADA, FMLA and NYCHRL, and;

i.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
March 27, 2018

Respectfully Submitted,

SAMUEL O. MADUEGBUNA (SM6084)
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff,
KARIAN GORDON
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155

TO:    **DEFENDANTS**

**CVS RX SERVICES, INC.**
c/o C T Corporation System
111 Eighth Avenue
New York, NY 10011

-19-

**CVS PHARMACY, INC.**
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

**CVS ALBANY, L.LC. d/b/a CVS**
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

**CVS HEALTH CORP.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

**KATHLEEN COLLINS**
CVS Regional Business Office
215 73rd Avenue, Windsor Shopping Plaza
Bayside, New York 11364

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*                    *Docket No.:*

--------------------------------------------------------------------------------------------------------------
*KARIAN GORDON,*

                              *Plaintiff,*

              *-against-*

*CVS RX SERVICES, INC., CVS PHARMACY, INC., CVS ALBANY, L.LC. d/b/a CVS, CVS HEALTH CORP., and KATHLEEN COLLINS,*

                              *Defendants.*
--------------------------------------------------------------------------------------------------------------

                    *COMPLAINT AND JURY DEMAND*

--------------------------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*

_____
*Print name beneath   SAMUEL O. MADUEGBUNA, ESQ.*

                         *Yours, etc.*

                 *MADUEGBUNA COOPER LLP*
                  *Attorneys for Plaintiff*
                 *30 Wall Street, 8th Floor*
                *New York, New York 10005*
                    *(212) 232- 0155*

*To: All Counsel of Record*
*Service of the within is hereby admitted on*
_____

*Attorneys for*

-21-